## CASE NO. 14-56558
_____

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

STEPHEN SIMONI, individually and on behalf
of all others similarly situated,
*Plaintiff-Appellant*,

vs.

AMERICAN MEDIA, INC.
*Defendant-Appellee*,
_____

On Appeal from the United States District Court
for the Central District of California
The Honorable Manuel L. Real
Case No. 14-CV-00573-R-(MANx)
_____

### APPELLEE'S BRIEF
_____

KELLI L. SAGER (SBN 120162)
  kellisager@dwt.com
JONATHAN L. SEGAL (SBN 264238)
  jonathansegal@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Facsimile: (213) 633-6899

JAY WARD BROWN
  jbrown@lskslaw.com
CAMERON A. STRACHER
  cstracher@lskslaw.com
LEVINE SULLIVAN KOCH
& SCHULZ, LLP
1899 L Street, NW, Suite 200
Washington, DC 20036
Telephone: (202) 508-1100
Fax:  (202) 861-9888

Attorneys for Defendant-Appellee
AMERICAN MEDIA, INC.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Appellee American

Media, Inc. states that it has no corporate parent. No other publicly held

corporation owns 10% or more of American Media, Inc.'s stock.

Dated: April 2, 2015        DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
JONATHAN L. SEGAL

LEVINE SULLIVAN KOCH & SCHULZ, LLP
JAY WARD BROWN
CAMERON A. STRACHER


By:    /s/ Kelli L. Sager
       Kelli L. Sager
Attorneys for Defendant-Appellee
American Media, Inc.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................1

II.   STATEMENT OF ISSUES FOR REVIEW ......................................3

III.  STATEMENT OF THE CASE .........................................................4

      A.   The Parties ...........................................................................4

      B.   The Articles ..........................................................................5

      C.   Procedural History ..............................................................7

IV.   SUMMARY OF ARGUMENT .....................................................12

V.    THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFF'S
      CLAIMS PURSUANT TO THE ANTI-SLAPP STATUTE .......................13

      A.   The District Court Correctly Held That The Anti-SLAPP
           Statute Applies to Plaintiff's Claims ..................................15

      B.   The District Court Correctly Held That Plaintiff's Statutory
           Claims Are Barred By The First Amendment ...................19

           1.   The Cover Lines Do Not Propose A Commercial
                Transaction. ..............................................................20

           2.   The Cover Lines Do More Than Propose a Commercial
                Transaction. ..............................................................22

           3.   The Cover Lines Are 'Inextricably Intertwined' With
                Protected Speech. .....................................................25

           4.   Plaintiff's Allegations Of "Falsity" Do Not Change The
                First Amendment Protections For The Cover Lines. ...............26

      C.   Plaintiff's Statutory Claims Fail For Additional, Independent
           Reasons. ...............................................................................30

           1.   Plaintiff Failed To Demonstrate A Violation of the
                Consumers Legal Remedies Act. ............................31

i

2.      Plaintiff Did Not Establish Any Violation of the False
        Advertising and Unfair Competition Laws...............................32

D.      The District Court Correctly Held That Plaintiff Cannot
        Establish The Elements Of His Common Law Claims........................35

        1.      There Is No Cause of Action for Unjust Enrichment. ..............35

        2.      Plaintiff's Fraud Claim Fails....................................36

        3.      Plaintiff's Breach of Contract Claim Fails. ............................37

VI.     THE DISTRICT COURT CORRECTLY AWARDED AMI ITS
        ATTORNEYS' FEES ...................................................................38

VII.    CONCLUSION.............................................................................45

DWT 26560747v7 0051427-000011

# TABLE OF AUTHORITIES

**Page**

## Cases

*Acosta-Huerta v. Estelle*,
  7 F.3d 139 (9th Cir 1992) ...................................................................30

*Agnir v. Gryphon Solutions, LLC*,
  2013 WL 4082974 (N.D. Cal. Aug. 9, 2013) .....................................40

*Alkayali v. Alkayali*,
  2012 WL 1835728 (Bankr. S.D. Cal. May 16, 2012).........................44

*Am. Acad. of Pain Mgmt. v. Joseph*,
  353 F.3d 1099 (9th Cir. 2004) ......................................................22, 24

*Bauer v. Atlantis Events Inc.*,
  No. 13-cv-5290 (C.D. Cal. filed July 23, 2013) ...................................4

*Bernardo v. Planned Parenthood Fed'n of Am.*,
  115 Cal. App. 4th 322 (2004) .............................................................32

*Birkner v. Lam*,
  156 Cal. App. 4th 275 (2007) ........................................................17, 18

*Bolger v. Youngs Drug Prods. Corp.*,
  463 U.S. 60 (1983).......................................................................*passim*

*Braun v. Chronicle Publ'g Co.*,
  52 Cal. App. 4th 1036 (1997) .............................................................13

*Brown v. Electronic Arts, Inc.*,
  722 F. Supp. 2d 1148 (C.D. Cal. 2010) ....................................41, 42, 44

*Charles v. City of Los Angeles*,
  697 F.3d 1146 (9th Cir. 2012) ............................................................24

*Cher v. Forum Int'l, Ltd.*,
  692 F.2d 634 (9th Cir. 1982) .......................................................27, 28

*City of Emeryville v. Robinson*,
  621 F.3d 1251 (9th Cir. 2010) ............................................................30

DWT 26560747v7 0051427-000011

*Cross v. Cooper*,
197 Cal. App. 4th 357 (2011) ...................................................................17, 18

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) .................................................................*passim*

*Do v. Hollins Law, P.C.*,
2013 WL 4013659 (N.D. Cal. Aug. 5, 2013) ....................................................40

*Doe v. Gangland Prods., Inc.*,
730 F.3d 946 (9th Cir. 2013) ...........................................................................15

*Doty v. County of Lassen*,
37 F.3d 540 (9th Cir. 1994) ..............................................................................39

*Dwight R. v. Christy B.*,
212 Cal. App. 4th 697 (2013) ...........................................................................18

*Dworkin v. Hustler Magazine, Inc.*,
867 F.2d 1188 (9th Cir. 1989) ..........................................................................23

*Eastwood v. National Enquirer, Inc.*,
123 F.3d 1249 (9th Cir. 1997) ..........................................................1, 11, 28, 34

*Evans v. Unkow*,
38 Cal. App. 4th 1490 (1995) ...........................................................................12

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*,
2014 WL 1922833 (E.D. Cal. May 14, 2014) ...................................................42

*Flatley v. Mauro*,
39 Cal. 4th 299 (2006) ......................................................................................16

*Flores v. Emerich & Fike*,
2006 WL 2536615 (E.D. Cal. Aug. 31, 2010).............................................43, 44

*Fox Searchlight Pictures, Inc. v. Paladino*,
89 Cal. App. 4th 294 (2001) .............................................................................16

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
771 F.3d 1119 (9th Cir. 2014) ..........................................................................31

DWT 26560747v7 0051427-000011

*Garcia v. Allstate Ins.*,
   2012 WL 4210113 (E.D. Cal. Sept. 18, 2012) ...................................................42

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) ...........................................................................42

*Gifford v. Nat'l Enquirer, Inc.*,
   1993 WL 767192 (C.D. Cal. 1993) ...................................................................34

*Graham-Sult v. Clainos*,
   756 F.3d 724 (9th Cir. 2014) ............................................................................38

*Greenbelt Coop. Publ'g Ass'n v. Brestler*,
   398 U.S. 6 (1970)...............................................................................................34

*Greensprings Baptist Christian Fellowship Trust v. Cilley*,
   629 F.3d 1064 (9th Cir. 2010) ..........................................................................41

*Greenwood v. FAA*,
   28 F.3d 971 (9th Cir. 1994) ........................................................................30, 35

*Harris v. Cnty. of Orange*,
   682 F.3d 1126 (9th Cir. 2012) ............................................................................6

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) .....................................................................*passim*

*Hoffman v. Capital Cities/ABC, Inc.*
   255 F.3d 1180 (9th Cir. 2001) ....................................................................22, 23

*In re ATM Fee Antitrust Litig.*,
   686 F.3d 741 (9th Cir. 2012) ...........................................................................31

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   724 F.3d 1268 (9th Cir. 2013), *cert. denied sub nom. Elec. Arts*
   *Inc. v. Keller*, 135 S. Ct. 42 (2014).....................................................................1

*Jackson v. Bank of Hawaii*,
   902 F.2d 1385 (9th Cir. 1990) .........................................................................43

*Jarrow Formulas, Inc. v. LaMarche*,
   31 Cal. 4th 728 (2003) ......................................................................................14

v

*Jones v. Globe Int'l, Inc.*,
  1995 WL 819177 (D. Conn. 1995) ...................................................................34

*Joseph Burstyn, Inc. v. Wilson*,
  343 U.S. 495 (1952)...................................................................................21, 23

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ...................................................................................32

*Keimer v. Buena Vista Books, Inc.*,
  75 Cal. App. 4th 1220 (1999) ........................................................................29

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ..........................................................................6

*Kunysz v. Sandler*,
  146 Cal. App. 4th 1540 (2007) ......................................................................13

*Leadsinger, Inc. v. BMG Music Publ'g*,
  512 F.3d 522 (9th Cir. 2008) ...................................................................11, 43

*Leidholdt v. L.F.P., Inc.*,
  860 F.2d 890 (9th Cir. 1988) .........................................................................24

*Lovejoy v. AT&T Corp.*,
  92 Cal. App. 4th 85 (2001) ............................................................................36

*Lyle v. Warner Bros. Television Prods.*,
  38 Cal. 4th 264 (2006) ...................................................................................21

*Makaeff v. Trump Univ., LLC*,
  736 F.3d 1180 (9th Cir. 2013) .........................................................................1

*Masson v. New Yorker Magazine, Inc.*,
  960 F.2d 896 (9th Cir. 1992) .........................................................................33

*Mayes v. Leipziger*,
  729 F.2d 605 (9th Cir. 1984) .........................................................................40

*McCarthy v. Mayo*,
  827 F.2d 1310 (9th Cir. 1987) .......................................................................44

vi

*Melchior v. New Line Prods., Inc.*,
106 Cal. App. 4th 779 (2003) ..............................................................35

*Mendoza v. ADP Screening & Selection Servs., Inc.*,
182 Cal. App. 4th 1644 (2010) ...........................................................16

*Mindy's Cosmetics, Inc. v. Dakar*,
611 F.3d 590 (9th Cir. 2010) ......................................................14, 19

*Montana v. San Jose Mercury News, Inc.*,
34 Cal. App. 4th 790 (1995) ...............................................................23

*Namath v. Sports Illustrated*,
48 A.D.2d 487 (1975) ............................................................................23

*Nat'l Life Ins. Co. v. Phillips Publ'g Co.*,
793 F. Supp. 627 (D. Md. 1992) ........................................................26

*Navellier v. Sletten*,
29 Cal. 4th 82 (2002) .............................................................................14

*Nelson v. Pearson Ford Co.*,
186 Cal. App. 4th 983 (2010) .............................................................31

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) .......................................................................26, 27

*Northon v. Rule*,
637 F.3d 937 (9th Cir. 2011) .......................................................12, 38

*Page v. Something Weird Video*,
960 F. Supp. 1438 (C.D. Cal. 1996) .................................................26

*People v. Fogelson*,
21 Cal. 3d 158 (1978) ...........................................................................26

*Pfau v. Mortenson*,
858 F. Supp. 2d 1150 (D. Mont. 2012), *aff'd*, 542 F. App'x 557
(9th Cir. 2013)..................................................................................37, 38

*Philadelphia Newspapers, Inc. v. Hepps*,
475 U.S. 767 (1986)........................................................................26, 36

vii

*Ray Charles Found. v. Robinson*,
  919 F. Supp. 2d 1054 (C.D. Cal. 2013) ............................................................44

*Rezec v. Sony Pictures Entm't, Inc.*,
  116 Cal. App. 4th 135 (2004) ..........................................................................20

*Riley v. Nat'l Fed'n of the Blind*,
  487 U.S. 781 (1988)..........................................................................................25

*Rochlis v. Walt Disney Co.*,
  19 Cal. App. 4th 201 (1993), *disapproved on other grounds by
  Turner v. Anheuser Busch, Inc.*, 7 Cal. 4th 1238 (1994).....................................37

*Rogers v. Home Shopping Network, Inc.*,
  57 F. Supp. 2d 973 (C.D. Cal. 1999) ................................................................40

*Sacchi v. ABC Fin. Servs.*,
  No. 14-cv-1196 (D.N.J. filed Feb. 24, 2014)......................................................4

*Sacchi v. Care One, LLC*,
  No. 14-cv-698 (D.N.J. filed Feb. 3, 2014) ..........................................................4

*Sacchi v. Clearpath Lending*,
  No. 13-cv-2080 (C.D. Cal. filed Nov. 12, 2013) ..................................................4

*Sacchi v. Cymetrix Corp.*,
  No. 14-cv-3625 (D.N.J. filed June 5, 2014) ........................................................4

*Sacchi v. Elyachar Props., LLC*,
  No. 13-cv-1103 (S.D.N.Y. filed Feb. 15, 2013) ..................................................5

*Sacchi v. Lifewatch Inc.*,
  No. 13-cv-2064 (C.D. Cal. filed Nov. 8, 2013) ..................................................4

*Sacchi v. MDB Staffing LLC*,
  No. 14-cv-7175 (D.N.J. filed Nov. 14, 2014)......................................................4

*Sacchi v. Verizon Online LLC*,
  No. 14-cv-423 (S.D.N.Y. filed Jan. 23, 2014)...................................4, 40, 41, 44

*Sacchi v. Walgreen Co.*,
  No. 13-cv-1284 (C.D. Cal. filed July 23, 2013) ..................................................5

DWT 26560747v7 0051427-000011

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................35

*Shulman v. Group W Productions, Inc.*,
    18 Cal. 4th 200 (1998) ................................................................21

*Simoni v. Costco*,
    No. 13-cv-8498 (C.D. Cal. filed Nov. 18, 2013) ................................................................4

*Simoni v. First Am. Fin. Corp.*,
    No. 14-cv-1296 (C.D. Cal. filed Feb. 20, 2014) ................................................................4

*Simoni v. Newo Corp.*,
    No. 14-cv-330 (C.D. Cal. filed Feb. 21, 2014) ................................................................4

*Simoni v. Procter & Gamble Co.*,
    No. 13-cv-600 (C.D. Cal. filed Apr. 2, 2013) ................................................................5

*Simoni v. United Parcel Serv.*,
    No. 14-cv-4374 (D.N.J. filed July 10, 2014) ................................................................4

*Smith v. Ford Motor Co.*,
    462 F. App'x 660 (9th Cir. 2011) ................................................................35

*Solano v. Playgirl, Inc.*,
    292 F.3d 1078 (9th Cir. 2002) ................................................................28

*Soukop v. Law Offices of Herbert Hafif*,
    39 Cal. 4th 260 (2006) ................................................................17

*Stutzman v. Armstrong*,
    2013 WL 4853333 (E.D. Cal. Sept. 10, 2013) ................................................*passim*

*Stutzman v. Armstrong*,
    Case No. 13-cv-00116, 2013 U.S. Dist. LEXIS 129204 (E.D. Cal.
    Sept. 9, 2013) ................................................................23

*Summit Bank v. Rogers*,
    206 Cal. App. 4th 669 (2012) ................................................................16

*Thomas v. Fry's Elecs., Inc.*,
    400 F.3d 1206 (9th Cir. 2005) (*per curiam*) ................................................................38

DWT 26560747v7 0051427-000011

*United States v. Alvarez*,
132 S. Ct. 2537 (U.S. 2012) ...............................................................27

*United States v. Alvarez*,
638 F.3d 666 (9th Cir. 2011) ...............................................................27

*Verizon Del., Inc. v. Covad Commc'ns Co.*,
377 F.3d 1081 (9th Cir. 2004) .............................................................40

*Wages v. IRS*,
915 F.2d 1230 (9th Cir. 1990) .............................................................43

*Wang v. Massey Chevrolet*,
97 Cal. App. 4th 856 (2002) ................................................................31

*Windham at Carmel Mountain Ranch Ass'n v. Super. Ct.*,
109 Cal. App. 4th 1162 (2003) ............................................................37

*Zacchini v. Scripps–Howard Broad. Co.*,
433 U.S. 562 (1977) .............................................................................21

*Zucchet v. Galardi*,
229 Cal. App. 4th 1466 (2014) ............................................................16

**Statutes**

California Business & Professional Code § 17500, *et seq.* .....................................32

California Civil Code
§ 1770(a) ..............................................................................................31
§ 1770(a)(14) ........................................................................................31
§ 1770(a)(14) ........................................................................................31

California Code of Civil Procedure
§ 425.16 ....................................................................................1, 8, 10, 12
§ 425.16(b)(1) .........................................................................3, 10, 14, 15
§ 425.16(b)(2) ........................................................................................6
§ 425.16(c)(1) .......................................................................................13
§ 425.16(e) ...........................................................................................13
§ 425.16(e)(3) .......................................................................................10

x

**Rules**

Federal Rules of Civil Procedure

7 ................................................................................................ 39
12(b) ......................................................................................... 39
12(b)(6) .................................................................................... 40
12(e) ......................................................................................... 39
12(f) ......................................................................................... 39
15 ................................................................................. 39, 40, 42
15(a) ......................................................................................... 39
15(a)(1) .............................................................................. 39, 43
28-2.7 ......................................................................................... 4
60(b)(6) .............................................................................. 12, 44

Rule 14 .................................................................................... 40

**Constitutional Provisions**

United States Constitution, First Amendment ................................ *passim*

**Other Authorities**

Kagan, Elena, *Private Speech, Public Purpose: The Role of Governmental Motive in First Amendment Doctrine*, 63 U. Chi. L. Rev. 413 (1996) .............................................................. 27

DWT 26560747v7 0051427-000011

# I.     INTRODUCTION

In this action, Plaintiff Stephen Simoni, a frequent class action litigant, asserts he was injured by the headlines (commonly called "cover lines") for two articles concerning the tragic disappearance of Malaysian Airlines Flight 370 (the "Articles") that were published by Defendant American Media, Inc. ("AMI") in the *National Enquirer* magazine (the "Enquirer").  Plaintiff purports to represent a class of consumers that he claims were "misled" by the cover lines and "deceived" into buying the magazine because they thought the Enquirer had "solved" the mystery of the whereabouts of the missing plane.  He has asserted claims for purported violations of the California Consumers Legal Remedies Act, the California False Advertising Law, and the California Unfair Competition Law, as well as claims for fraud, breach of contract and unjust enrichment.

AMI moved to strike Plaintiff's Complaint pursuant to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.[1]  The district court granted AMI's motion, recognizing that California's consumer protection laws have no application to noncommercial speech, like the Articles, and that in any

---

[1] "'SLAPP' stands for 'strategic lawsuit against public participation.'" *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 n.1 (9th Cir. 2010) (citation omitted). Federal courts apply section 425.16 when sitting in diversity jurisdiction. *Id.* at n.2; *accord, e.g., In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1272 (9th Cir. 2013), *cert. denied sub nom. Elec. Arts Inc. v. Keller*, 135 S. Ct. 42 (2014); *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1187 (9th Cir. 2013).

1

event, no *reasonable* reader of the cover lines would have been misled about the content of the magazine.

As discussed in more detail below, the district court's ruling, and its award of attorneys' fees under the anti-SLAPP statute, should be affirmed in its entirely.

First, the district court properly determined that AMI's speech – namely, the Articles and cover lines – is of the type protected by the anti-SLAPP statute, and that Plaintiff could not evade the statute merely by alleging that the speech at issue was false.

Second, in evaluating whether Plaintiff met his burden of demonstrating a probability of prevailing on the merits of any of his claims, the district court correctly applied well-settled precedent in concluding that he had not. As the court held, Plaintiff's statutory claims are barred as a matter of law because the consumer protection statutes on which his claims rely apply only to commercial speech, not to expressive works like the Articles and cover lines at issue here. Moreover, the district court properly found that Plaintiff's claims were independently barred, because he could not establish the essential elements of any of his claims. Because these legal defects could not be remedied, the court correctly denied Plaintiff's request for leave to amend his Complaint, and properly awarded AMI its reasonable attorneys' fees and costs incurred in defending against this wholly meritless lawsuit. This Court should affirm these rulings in their

2

entirety, and hold that AMI is entitled to recover its fees and costs incurred on appeal.  C.C.P. § 425.16(b)(1).

## II.  STATEMENT OF ISSUES FOR REVIEW

1.     Did the district court correctly hold that California's anti-SLAPP statute applied to Plaintiff's Complaint where all of the claims arose from AMI's reporting on a matter of public interest, namely, the disappearance of Malaysian Fight 370, notwithstanding Plaintiff's assertion that the cover lines contained false statements?

2.     Did the district court correctly hold that Plaintiff could not meet his burden of demonstrating a probability of success on the merits of his three statutory consumer protection claims because the statutes at issue apply only to "commercial speech," and not to expressive works like the Articles and cover lines?

3.     Did the district court correctly hold that Plaintiff failed to meet his burden of demonstrating a probability of success on the merits of his common law claims because he could not establish the essential elements of any of them?[2]

_____

[2] Because Plaintiff failed to make any arguments in his Opening Brief concerning the common law claims, this Court should find that he waived his right to challenge the district court's ruling on these claims, and that it need not reach the merits of these claims.  *See* Section IV, *infra*.

3

4.     Did the district court properly deny Plaintiff leave to amend his complaint on the ground that any amendment would have been futile, and properly award AMI its reasonable attorneys' fees under the mandatory fee-shifting provisions of the anti-SLAPP statute?

Pursuant to Circuit Rule 28-2.7, an addendum is bound with this brief that sets forth pertinent constitutional provisiosns, statutes and rules.

### III.     STATEMENT OF THE CASE

### A.     The Parties

Plaintiff Stephen Simoni is both the attorney and lead class representative for a purported "class" of consumers who purchased the March 31, 2014 edition of the Enquirer.  ER 26 & 31, ¶ 19.[3]  Mr. Simoni is a frequent litigant:  In the past two years, Mr. Simoni, typically representing either himself or his spouse, has filed at least 15 purported class action lawsuits in federal courts alone.[4]

_____

[3]  References to the ER in this Brief use the ECF pagination for that document; *i.e.*, ER 19 refers to page 19 of the forty-eight page ER (Dkt. 5).

[4]  *See Sacchi v. MDB Staffing LLC*, No. 14-cv-7175 (D.N.J. filed Nov. 14, 2014); *Simoni v. United Parcel Serv.*, No. 14-cv-4374 (D.N.J. filed July 10, 2014); *Sacchi v. Cymetrix Corp.*, No. 14-cv-3625 (D.N.J. filed June 5, 2014); *Sacchi v. ABC Fin. Servs.*, No. 14-cv-1196 (D.N.J. filed Feb. 24, 2014); *Simoni v. Newo Corp.*, No. 14-cv-330 (C.D. Cal. filed Feb. 21, 2014);  *Simoni v. First Am. Fin. Corp.*, No. 14-cv-1296 (C.D. Cal. filed Feb. 20, 2014); *Sacchi v. Care One, LLC*, No. 14-cv-698 (D.N.J. filed Feb. 3, 2014); *Sacchi v. Verizon Online LLC*, No. 14-cv-423 (S.D.N.Y. filed Jan. 23, 2014); *Simoni v. Costco*, No. 13-cv-8498 (C.D. Cal. filed Nov. 18, 2013); *Sacchi v. Clearpath Lending*, No. 13-cv-2080 (C.D. Cal. filed Nov. 12, 2013); *Sacchi v. Lifewatch Inc.*, No. 13-cv-2064 (C.D. Cal. filed Nov. 8, 2013); *Bauer v. Atlantis Events Inc.*, No. 13-cv-5290 (C.D. Cal. filed July

4

Defendant AMI publishes "news information via printed and electronic publications," including the Enquirer.  ER 26, ¶ 1.

### B.    The Articles

On March 8, 2014, Malaysian Airlines Flight 370 disappeared from radar; neither the plane nor its passengers have been found.[5]  Speculation about what happened to the flight – contained in many news articles published before the Articles at issue here – has ranged from an accident, to a hijacking, to a planned disappearance, to an act of sabotage or terrorism.[6]

---

23, 2013); *Sacchi v. Walgreen Co.*, No. 13-cv-1284 (C.D. Cal. filed July 23, 2013); *Simoni v. Procter & Gamble Co.*, No. 13-cv-600 (C.D. Cal. filed Apr. 2, 2013); *Sacchi v. Elyachar Props., LLC*, No. 13-cv-1103 (S.D.N.Y. filed Feb. 15, 2013).

[5] *See, e.g.*, *Missing Malaysia Plane MH370: What We Know*, BBC.com (Jan. 30, 2015), http://www.bbc.com/news/world-asia-26503141 (describing extraordinary scope of search and failure to locate plane or wreckage).

[6] *See, e.g.,* SER 2-4, ¶¶ 3-10; SER 10-40 (attaching copies of *Missing flight MH370 'diverted by deranged hijacker'*, The Sunday Times, (Mar. 16, 2014); *Fire in cargo brought down missing plane*, Daily Mirror (Mar. 19, 2014); *Flight 370 Could Have Landed in Pakistan*, Fox News Insider (Mar. 18, 2014); *MYSTERY PLANE HIJACKED Evil aboard Malaysian jet 'conclusive'*, Daily News (Mar. 15, 2014); *Flight MH370: A pilot's simple explanation of what went wrong*, National Business Review (March 19, 2014); *Reports Surface That Flight 370 Was Intentionally Flown to Andaman Islands*, Inside Edition (Mar. 14, 2014); *Missing Plane Found On The Moon*, Sunday Sport (Mar. 16, 2014); *Terror aboard doomed flight MH370: Experts reveal nightmare of last minutes*, Daily Express (Mar. 25, 2014)).  *See also* ER 21 (noting the "wide array of theories reported by other media outlets regarding Flight 370").

5

In its March 31, 2014 issue, the Enquirer published two articles about Flight 370: one was titled *Flight 370 Mystery Solved!,* and the other was titled *Skyjack Was Blueprint for New 9/11* (the "Articles"). SER 2, ¶ 2; SER 5-9. *See also* ER 42 (Complaint Ex. A).[7] Both of the Articles reported some of the then-current theories about the disappearance of the airliner. Specifically, based on named and unnamed sources, including academic experts and intelligence officials, the Articles reported the sources' theory that Flight 370 had been hijacked by al-Qaeda terrorists as a "blueprint" for a new 9/11. Quoting the sources and referencing government files, the Articles recounted the sources' conclusions that terrorists planned to see if they could hijack and hide a plane to create a fleet of bomb-filled airplanes that could be used later to target American cities. SER 6-9. According to Dr. Mathieu Deflem, a professor at the University of South Carolina and the author of several books on terrorism, who was quoted in one of the Articles, "'[i]t's possible the airplane was stolen to be used as a bomb.'" SER 8. Another terrorism

---

[7] Exhibit A to the Complaint consists of only half of the March 31, 2014, Enquirer cover, and did not include the accompanying Articles. Because the Articles are referenced in the Complaint, however, the district court properly relied upon complete copies that were submitted by AMI with its anti-SLAPP motion. Cal. Civ. Proc. Code § 425.16(b)(2) ("[i]n making its determination [on a motion to strike], the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."); *see also Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (court may consider matters referenced in, but not attached to, a complaint); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (same).

6

expert was quoted as stating: "'The belief is that Flight 370 is just the tip of the iceberg for a much larger plot …. American intelligence officials secretly suspect this is the beginning of a massive terrorist program involving the hijacking of other large commercial airliners with long-range capabilities.'" *Id.*

The cover headlines (or "cover lines," as they are commonly known) for the Articles on the front page of the March 31, 2014 issue read: "MYSTERY OF FLIGHT 370 SOLVED!" Below that heading was the following language: "SECRET U.S. GOV'T FILES REVEAL: > Pilots were TERROR RECRUITS | Hijacking was test run for NEW 9/11 | HOW they did it *& MORE*." SER 6. The cover lines appear on the top fifth of the front page of the Enquirer, and are accompanied by the legend, "Enquirer Investigation." The remaining four-fifths of the page, and the main cover image, is a photo spread titled "CELEBRITY BODY DISASTERS! 40 STARS AS THEY REALLY ARE." *Id.*

### C.   Procedural History

Plaintiff filed his Complaint as a putative class action on March 22, 2014. He purports to represent a class of consumers who purportedly were injured by statements on the cover page of the Enquirer that he claims indicated that the issue "contained news information explaining how the 'mystery of [Malaysian Airlines] Flight 370' had been 'SOLVED!'" ER at 30-31, ¶ 19 (bracketed material in original). In essence, Plaintiff claimed that the cover lines "tricked" him into

purchasing a copy of the magazine; consequently, he sued for violation of the California Consumers Legal Remedies Act ("CLRA"), violation of the California False Advertising Law ("FAL"), and violation of the California Unfair Competition Law ("UCL") (First, Second and Third Causes of Action, respectively), and he alleged common law claims for unjust enrichment, fraud, and breach of contract (Fourth, Fifth and Sixth Causes of Action, respectively). He sought class certification, damages, and injunctive relief. ER 35-39.

AMI filed an anti-SLAPP motion, seeking dismissal of all Plaintiff's claims. The Motion explained why the challenged Articles and cover lines were within the ambit of Section 425.16, and argued each of the following grounds for dismissal:

(1)   All three statutory claims are barred because the statutes apply only to "commercial speech" and, as a matter of First Amendment law, the Articles and cover lines are not commercial speech;

(2)   Independently, each of the statutory claims is barred because Plaintiff cannot allege facts required to meet the elements of the claims.

(A)   Plaintiff's First Cause of Action for violation of the CLRA fails as a matter of law because that statute applies only to misrepresentations concerning the "rights, remedies or obligations" in the sale of a good or service, and because such a

8

claim must be based on a written contract, neither of which

element is present here; and

(B)     Plaintiff's Second and Third Causes of Action, for violation of

the FAL and UCL, fail as a matter of law because he cannot

demonstrate that any *reasonable* member of the public would

have been deceived into purchasing the publication by the cover

lines.

(3)     AMI also argued that each of Plaintiff's common law claims

independently failed:

(A)     There is no independent cause of action under California law

for "unjust enrichment";

(B)     Plaintiff cannot demonstrate a false misrepresentation of fact by

AMI on which he justifiably relied, both of which are required

elements of his fraud claim; and

(C)     Plaintiff's breach of contract claim fails for lack of privity.

SER 1-2.

In his Opposition brief, Plaintiff completely ignored AMI's arguments

pointing out the defects in the three common law claims, and also failed to respond

to AMI's argument that he could not allege facts sufficient to support his First

Cause of Action under the CLRA.  Dkt. 12.  Instead, based on the inaccurate

premise that AMI had "conceded" that it knowingly published false information, Plaintiff argued that the deliberate publication of false information is excluded from the protections of the SLAPP statute, and is prohibited by California's consumer protection statutes.  Id.  Plaintiff's only other argument was that he had "relied" on the purportedly false statement, and therefore could proceed on his statutory claims.  Id.

The district court rejected both of Plaintiff's arguments, and granted AMI's motion by an order dated July 22, 2014.  ER 18-22.  In doing so, the district court applied the two-step process prescribed by this Court and the California appellate courts for determining whether a plaintiff's claims are subject to dismissal under section 425.16:  First, the district court applied the plain language of the statute and well-established case law to the Articles and cover lines, and determined that AMI's publication was precisely the type of act that falls within the scope of Section 425.16 in the first instance.  ER 18-20 (*citing* C.C.P. § 425.16(e)(3), (4)).

Second, as the district court correctly observed, the burden then shifted to Plaintiff to establish a probability of prevailing on each of his claims.  ER 18 (citing, *inter alia*, C.C.P. § 425.16(b)(1)).  The district court applied well-settled law in finding that the Plaintiff failed to meet this burden wth respect to his statutory claims, because the three statutes in question apply only to commercial speech, and the Articles and related cover lines were not commercial speech

10

because "they do 'more than propose a commercial transaction.'" ER 19-20 (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)). With respect to Plaintiff's common law claims, even though he had abandoned them in his opposition brief, the district court nonetheless analyzed the legal arguments presented by AMI, and concluded that the Plaintiff could not meet his burden on any of the claims. First, it correctly held that "unjust enrichment" is not an independent cause of action under California law. ER 21. Second, the district court held that plaintiff's breach of contract claim required privity between him and AMI, which he had failed to demonstrate. ER 22. Finally, the district court struck plaintiff's fraud claim, holding that plaintiff could not demonstrate the cover lines were false and, even if he could, "as an educated attorney combined with the fact that the *Enquirer* is a well-known tabloid publication … any purported reliance on those representations [would be] unreasonable." ER 21.

The district court also considered and denied Plaintiff's request for leave to amend, finding that "the complaint could not be saved by any amendment." ER 22 (citing *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)). The court ordered that any motion for attorneys' fees, as mandated under the anti-SLAPP statute, be brought within fourteen days (ER 22); AMI timely filed its motion for fees and costs. Dkt. 17.

11

Plaintiff filed a motion under Rule 60(b)(6) for relief from the district court's order, claiming that he had a "right" to file an amended complaint before the court could award attorneys' fees. ER 13. The district court denied that motion as well, and held that AMI was entitled to $66,271.65 in attorneys' fees, and $339.23 in costs for the proceedings in the district court. ER 10.[8] This appeal followed.

## IV.  SUMMARY OF ARGUMENT

Where, as here, a plaintiff brings claims based upon the publication of information about a matter of public interest, he bears the burden under California's anti-SLAPP statute of demonstrating that "there is a probability that [he] will prevail" on his claim. C.C.P. § 425.16. If he fails to meet this burden, the statute requires that the Complaint be stricken. *Id.* As the district court correctly held, the consumer protection statutes invoked by Plaintiff apply only to commercial speech, and do not apply to the Articles and cover lines at issue, which are expressive works that are entitled to the full protection of the First Amendment.

_____

[8] AMI also is entitled to recover its fees and costs incurred in defending against this meritless appeal. *See Northon v. Rule*, 637 F.3d 937, 939 (9th Cir. 2011) (granting award of fees on appeal under Oregon anti-SLAPP law, and noting that the Oregon law is based on the California law); *Evans v. Unkow*, 38 Cal. App. 4th 1490, 1499 (1995) ("[t]he defendants correctly contend that if they prevail on this appeal they are entitled to recover their appellate attorney fees. A statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise").

DWT 26560747v7 0051427-000011

Independently, Plaintiff cannot establish the essential elements of any of his common law claims as a matter of law. Because Plaintiff could not and did not satisfy his burden of demonstrating a "probability" of success on the merits of any claim, his Complaint was properly dismissed. Moreover, because it is clear as a matter of law that no amendment could save his defective Complaint, the district court properly dismissed the lawsuit with prejudice, and properly awarded AMI its attorneys' fees and costs. Accordingly, the district court's order dismissing the Complaint with prejudice, and its subsequent order awarding AMI its attorneys' fees, should be affirmed.

## V.   THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFF'S CLAIMS PURSUANT TO THE ANTI-SLAPP STATUTE

The California Legislature enacted the anti-SLAPP statute two decades ago, declaring that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." C.C.P. § 425.16(a). The statute provides a mechanism "to dismiss meritless lawsuits" impacting free speech rights "at the earliest stage of the case," *Kunysz v. Sandler*, 146 Cal. App. 4th 1540, 1543 (2007), and is "designed to nip SLAPP litigation in the bud," *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (1997). If an anti-SLAPP motion is successful, the case is dismissed and the defendant is entitled to recover its reasonable attorneys' fees and costs. C.C.P. § 425.16(c)(1).

13

Under the statute, any "cause of action … arising from any act … in furtherance of the person's right of petition or free speech … in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." C.C.P. § 425.16(b)(1). As the California Supreme Court has explained, the statute applies to all claims that arise from expressive activities, regardless of the label affixed to them. *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 739 (2003) ("in choosing comprehensive language for the anti-SLAPP statute's 'arising from' prong, '[t]he Legislature recognized that all kinds of claims could achieve the objective of a SLAPP suit.'" (quoting *Navellier v. Sletten*, 29 Cal. 4th 82, 92-93 (2002) (internal marks omitted)).

This Court has instructed that district courts "'considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry.' First, the defendant must make a prima facie showing that the plaintiff's suit 'arises from an act in furtherance of the defendant's rights of petition or free speech.'" *Mindy's Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citation omitted). "Second, '[i]f the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim.'" *Hilton*, 599 F.3d at 903 (citation omitted); *see also Mindy's Cosmetics*,

611 F.3d at 595 (same). If the plaintiff fails to carry this burden, the claim must be dismissed. *E.g.*, *Hilton*, 599 F.3d at 903. As discussed in the following sections, the district court properly engaged in the required two-part inquiry, and correctly determined that all of Plaintiff's claims should be dismissed with prejudice.

## A. The District Court Correctly Held That The Anti-SLAPP Statute Applies to Plaintiff's Claims.

As noted, the anti-SLAPP statute applies to any "cause of action" that arises from "any act … in furtherance of the person's right of petition or free speech," provided that the act is "in connection with a public issue." C.C.P. § 425.16(b)(1). Plaintiff does not dispute that publishing a magazine is an exercise of free speech rights, or that the "Mystery of Flight 370" is a public issue. ER 18.

In an attempt to escape application of the anti-SLAPP statute to his claims, however, Plaintiff asserts that the cover lines on the front page of the Enquirer's March 31 issue are excluded from the protections of the statute because they included a "knowingly false" statement – *i.e.*, that the "Mystery of Flight 370" was "Solved!" Appellant Br. at 19. But as the district court correctly found, ER 19, Plaintiff's assertion improperly conflates the first and second prongs of the statute: It is *irrelevant* to the first prong of the anti-SLAPP analysis whether a plaintiff *alleges* that a defendant's speech is criminal. *See, e.g.*, *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 954 (9th Cir. 2013) ("[t]o determine whether a defendant has met its initial burden [under the anti-SLAPP statute], a court does not evaluate

15

whether a defendant's conduct was lawful or unlawful. Instead, "any 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support'" in next step of analysis (citations omitted)); *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 305 (2001) ("[t]he Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish her actions are constitutionally protected under the First Amendment as a matter of law.").

Moreover, even at the second step of the analysis, where the court considers whether the plaintiff has meet his burden of showing a probability of success on his claims, the narrow exception to the anti-SLAPP statute for "illegal" activity is limited to circumstances that plainly have no application here. *See Mendoza v. ADP Screening & Selection Servs., Inc.*, 182 Cal. App. 4th 1644, 1654 (2010) (exception only applies to conduct that is indisputably "*criminal*") (emphasis added).

In *Flatley v. Mauro*, 39 Cal. 4th 299 (2006), on which Plaintiff principally relies, the California Supreme Court declined to apply the SLAPP statute based on "specific and extreme circumstances" where there was *no dispute* that the defendant had sent a criminally extortionate letter. *Id.* at 332 n.16. Subsequent courts have limited the case to its "very narrow and extreme" facts. *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 692 (2012). *See also Zucchet v. Galardi*, 229

16

Cal. App. 4th 1466, 1478 (2014) ("the exception for illegal activity is very narrow and applies only in undisputed cases of illegality"); *Stutzman v. Armstrong*, 2013 WL 4853333, at \*8 (E.D. Cal. Sept. 10, 2013) (holding that defendant author's "lies about his use of drugs are simply not criminal conduct"). For this "narrow" exception to apply, plaintiffs must show that "either the defendant concedes the illegality of the assertedly protected activity or the illegality is *conclusively established* by the evidence presented in connection with the motion to strike." *Soukop v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 286-87 (2006) (emphasis added); *see also Birkner v. Lam*, 156 Cal. App. 4th 275, 285 (2007) ("conduct that would otherwise come within the scope of the anti-SLAPP statute does not lose its coverage … simply because it is *alleged* to have been unlawful or unethical") (original emphasis; quotation marks and citations omitted).

Plaintiff did not come close to carrying his "burden of conclusively proving the illegal conduct." *Cross v. Cooper*, 197 Cal. App. 4th 357, 385 (2011). This is a heavy burden. In *Cross*, for example, the trial court had found that the defendant's conduct constituted extortion and, therefore, was not entitled to the protection of the SLAPP statute. The Court of Appeal reversed, holding that the plaintiff had not met his burden of "conclusively establishing" illegal conduct because the defendant disputed whether his statements constituted extortion, and the elements of the offense were factually contested. *Id.* at 386-87. The court

17

made clear that illegal conduct exception *only* applies in "those *rare* cases in which there is uncontroverted and uncontested evidence that establishes the crime *as a matter of law*." *Id.* at 386 (emphasis added); *see also Birkner*, 156 Cal. App. 4th at 285 (holding that "the evidence does not conclusively establish that [the defendant's] conduct of serving and refusing to rescind the termination notice was illegal"); *Dwight R. v. Christy B.*, 212 Cal. App. 4th 697, 713 (2013) (exception inapplicable where unlawfulness disputed). Here, there is no dispute that the underlying "conduct" is the exercise of free speech rights about a matter of public concern, and not a concededly or indisputably "illegal" act, as the district court correctly held. ER 19.

Plaintiff focuses much of his argument on the straw man claim that AMI purportedly "admitted" that the disappearance of Flight 370 is a mystery that remains "unsolved," Appellant Br. at 17 (citation omitted), while the challenged cover lines report the mystery was "Solved!" *Id.* This purported contradiction, Plaintiff asserts, is "sufficient to render [AMI's] conduct actionable." *Id.* To the contrary, what this actually reflects is an unreasonable reading by Plaintiff of the language on the cover page of the Enquirer, in a strained effort to manufacture a purportedly "false" statement.

Plaintiff's arguments all derive from the faulty premise that the word "Solved!" as used in the cover lines must be understood as a statement by AMI that

18

it had *located* the missing plane and would report inside the newspaper the plane's physical whereabouts. To the contrary, when in context, as the law requires, the cover lines identify precisely what part of the mystery AMI believes has been "solved," and what readers would find in the Articles: AMI obtained information from the "gov[ernmen]t" that "reveal[ed]" that the "pilots were terror recruits," and the "hijacking was [a] test run for [a] new 9/11"; and the Articles explained "how the[pilots] did it." SER 6 (quoting cover lines appearing immediately below the word "Solved!") (upper case letters and bolding of some words omitted). When compared to the contents of the Articles, the cover lines accurately summarize the information about Flight 370 that AMI reported.

In short, the narrow exception in the SLAPP statute for illegal activity does not apply to AMI's publication of the Articles and the cover lines; consequently, the district court correctly determined that the SLAPP statute applies to Plaintiff's claims. Plaintiff therefore was required to demonstrate a probability that he will prevail on the merits of his claims. *Hilton*, 599 F.3d at 903; *Mindy's Cosmetics*, 611 F.3d at 595. The district court correctly held that plaintiff did not and cannot meet this burden.

### B. The District Court Correctly Held That Plaintiff's Statutory Claims Are Barred By The First Amendment.

Plaintiff's First, Second and Third Causes of Action each purport to arise from California statutes designed to protect consumers from various types of

19

deceptive conduct. But each of the statutes he invokes necessarily applies only to "commercial speech," and not to expressive works such as the Articles and the cover lines. *See, e.g., Rezec v. Sony Pictures Entm't, Inc*., 116 Cal. App. 4th 135, 140 (2004). Consequently, the district court correctly held that plaintiff's statutory claims all fail as a matter of law. ER 20-21.

To determine whether particular speech is commercial or non-commercial, this Court has instructed district courts to ask three questions: (1) Does the speech do no more than propose a commercial transaction?; (2) If speech proposes a commercial transaction, but also does more, does the non-commercial portion outweigh the commercial?; and (3) Even if the commercial portion predominates, is the non-commercial portion so intertwined with the commercial that the speech should nevertheless be afforded full protection? *See Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 957-58 (9th Cir. 2012). Here, as the district court correctly recognized, the answers to all three questions justify a finding that the Articles and cover lines are non-commercial. Plaintiff's allegation that the cover lines are somehow "false" does not alter this conclusion.

### 1. The Cover Lines Do Not Propose A Commercial Transaction.

As this Court has held, in evaluating whether a publication fits within the "'core notion of commercial speech,'" *id.* at 957 (citation omitted), "[c]ore" commercial speech is "speech which does '*no more* than propose a commercial

20

transaction.'" *Id.* (*quoting Bolger,* 463 U.S. at 66 (emphasis added; internal marks and citations omitted)). If the speech does not propose a commercial transaction, then no further inquiry is required – the speech is deemed to be non-commercial, and is entitled to full First Amendment protection. *Id.*; *see also Stutzman,* 2013 WL 4853333, at *16.

Here, as the district court properly found, neither the Articles nor the cover lines propose any commercial transaction. ER 20-21. They do not contain any offer to sell, statement of terms, or any call to a consumer to take action. Instead, the cover lines simply summarize what is discussed in the Articles that appear on the inside pages of the magazine. Consequently, for this reason alone, the Articles and cover lines should be deemed to be non-commercial speech, to which the statutes on which plaintiff premises his claims do not apply. *See Hilton*, 599 F.3d at 905 n.7 (cover of greeting card featuring image of celebrity "is not advertising the product; it *is* the product. It is sold for a profit, but that does not make it commercial speech for First Amendment purposes." (emphasis in original)).[9]

---

[9] The fact that a magazine may entertain as well as enlighten does not change its constitutional protection. As the California Supreme Court explained in *Shulman v. Group W Productions, Inc*., 18 Cal. 4th 200, 220 (1998), "[t]he constitutional guarantees of freedom of expression apply with equal force to the publication whether it be a news report or an entertainment feature." (internal marks and citations omitted). *See also Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 296 (2006) ("'[t]here is no doubt that entertainment, as well as news, enjoys First Amendment protection.'" (quoting *Zacchini v. Scripps–Howard Broad. Co.,* 433 U.S. 562, 578 (1977)); *Joseph Burstyn, Inc. v. Wilson,* 343 U.S.

## 2. The Cover Lines Do More Than Propose a Commercial Transaction.

Even if the cover lines properly could be construed as somehow proposing a commercial transaction (which they cannot), they still would have the full protection of the First Amendment because they do *more* than just propose such a transaction. Where the speech in question contains both commercial and non-commercial elements, this Court has instructed lower courts to apply the three-part test set forth in *Bolger* to determine whether the speech nevertheless merits full First Amendment protection. *Dex Media*, 696 F.3d at 957-58. In *Bolger*, "the Supreme Court held that speech could properly be characterized as commercial when (1) the speech is admittedly advertising, (2) the speech references a specific product, and (3) the speaker has an economic motive for engaging in the speech." *American Academy of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1106 (9th Cir. 2004).

Applying those tests here, it is clear that the Articles and cover lines at issue do not satisfy any of the three *Bolger* requirements. First, the cover lines are not "admittedly an advertisement," as the district court correctly observed. ER 20. Instead, they are expressive content that summarizes the gist of the Articles and is

---

495, 501 (1952) (movies involve free speech); *Hoffman v. Capital Cities/ABC, Inc.* 255 F.3d 1180, 1185 (9th Cir. 2001) (Los Angeles magazine feature on Hollywood fashion was constitutionally protected because "[a]ny commercial aspects are 'inextricably entwined' with expressive elements, and so they cannot be separated out 'from the fully protected whole'") (internal marks and citations omitted).

DWT 26560747v7 0051427-000011

therefore fully protected. *See, e.g., Stutzman v. Armstrong,* Case No. 13-cv-00116, 2013 U.S. Dist. LEXIS 129204 (E.D. Cal. Sept. 9, 2013) (holding that statements on the cover of a book and on the jacket do "more than merely propose a commercial transaction, because it describes the contents of the Books, the Books' classification as a biography, and describes one of the Books' authors, Lance Armstrong."). *See also Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1198 (9th Cir. 1989) (holding that use of plaintiff's photograph was for more than purely commercial purposes); *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790 (1995) (same for poster); *Namath v. Sports Illustrated*, 48 A.D.2d 487 (1975) (use of plaintiff s photograph was incidental advertising of magazine in which plaintiff had been depicted).

Second, unlike advertisements or promotional pitches or endorsement "blurbs," the cover lines do not reference a specific product, or *any* product for that matter.

Finally, the fact "that books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment." *Joseph Burstyn, Inc.,* 343 U.S. at 501. Indeed, "economic motive in itself is insufficient to characterize a publication as commercial." *Dex Media,* 696 F.3d at 960 (citing *Bolger,* 463 U.S. at 67); *see also, e.g., Hoffman*, 255 F.3d at 1185-86 ("[a] printed article meant to draw

23

attention to the for-profit magazine in which it appears, however, does not fall outside of the protection of the First Amendment because it may help to sell copies"); *American Academy of Pain Mgmt. v. Joseph*, 353 F.3d at 1106 (9th Cir. 2004) ("'[f]aced with the need to ensure that First Amendment-protected expression is not unduly chilled by the threat of tort actions that would otherwise prevent the truthful promotion of protected expressive works, under certain circumstances we extend an advertised work's First Amendment protection to advertisements for the work.'" (quoting *Charles v. City of Los Angeles,* 697 F.3d 1146, 1153 (9th Cir. 2012))). Indeed, the Ninth Circuit has explicitly held that the fact that a magazine "is operated for profit does not extend a commercial purpose to every article within it." *Leidholdt v. L.F.P., Inc*., 860 F.2d 890, 895 (9th Cir. 1988).

Thus, even if the cover lines and Articles can be said to propose a commercial transaction at all, it is plain that they "do more" than merely propose such a commercial transaction; they convey to the reader the gist of the contents of the fully protected Articles.

24

### 3. The Cover Lines Are 'Inextricably Intertwined' With Protected Speech.

Even if the cover lines constituted commercial speech in the first instance – which is not the case here – the language on the front page of the Enquirer nevertheless would be fully protected by the First Amendment because any commercial aspects of the speech are "inextricably intertwined" with protected non-commercial speech. *Dex Media*, 696 F.3d at 958 (speech does not "retain[] its commercial character when it is inextricably intertwined with otherwise fully protected speech." (internal marks and citations omitted)). Because the cover lines accurately summarize what is contained in the Articles, it is "nearly impossible" to separate the cover lines from the content of the Articles themselves. *Id.*; *see also Stutzman,* 2013 WL 4853333, at *18-19 (finding editorial contents of books and promotional materials were inextricably intertwined and therefore fully protected by First Amendment, noting that "the economic reality in this age of technology is that publishing companies and authors must promote the books they publish and write in order to sell them, if publishing houses are to continue to operate and books are to continue to be sold in paper and hard copies"); *Riley v. Nat'l Fed'n of the Blind,* 487 U.S. 781, 796 (1988) (commercial components of charitable speech could not be separated from the fully protected whole).[10]

---

[10] Even free-standing advertisements for constitutionally protected speech must be accorded the same constitutional protection as the underlying speech.

Case: 14-56558, 04/02/2015, ID: 9482780, DktEntry: 12-1, Page 39 of 63

**4. Plaintiff's Allegations Of "Falsity" Do Not Change The First Amendment Protections For The Cover Lines.**

Plaintiff's argument that allegedly false speech is not entitled to First Amendment protection puts the proverbial cart before the horse. The Court must determine, as an initial matter, whether the communication at issue constitutes commercial speech; if it is not commercial speech, the consumer statutes have no application whatsoever. Moreover, Plaintiff's contention that there is no First Amendment protection for allegedly false speech is contrary to fifty-plus years of jurisprudence, which has conclusively established the proposition that "erroneous statement[s] [are] inevitable" in public discourse, and "must be protected if the freedoms of expression are to have the breathing space that they need to survive." *New York Times Co. v. Sullivan*, 376 U.S. 254, 271-72 (1964) (internal marks and citations omitted); *see also Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 778 (1986) ("'[t]he First Amendment requires that we protect some falsehood in

---

*Bolger,* 463 U.S. at 68. *See also Page v. Something Weird Video*, 960 F. Supp. 1438, 1444 (C.D. Cal. 1996) ("Defendants' advertising [including the cover of the videotape] is protected because the videos themselves are protected by the First Amendment, and the advertising is incidental to the protected publication of the videos"); *Nat'l Life Ins. Co. v. Phillips Publ'g Co.*, 793 F. Supp. 627, 648 (D. Md. 1992) (promotional materials for an investment newsletter that included allegedly false statements from articles in the newsletter must be accorded the same constitutional protection as the articles themselves); *People v. Fogelson*, 21 Cal. 3d 158, 165 n.7 (1978) ("commercial solicitation or promotion of constitutionally protected written works is protected as an incident to the First Amendment value of the underlying speech or activity").

DWT 26560747v7 0051427-000011

order to protect speech that matters'" (citation omitted)); *United States v. Alvarez*, 132 S. Ct. 2537, 2545 (2012) (affirming Ninth Circuit ruling in finding that the "Court has never endorsed the categorical rule the Government advances: that false statements receive no First Amendment protection.").[11]  Indeed, the Supreme Court has noted that "[e]ven a false statement may be deemed to make a valuable contribution to public debate, since it brings about the clearer perception and livelier impression of truth, produced by its collision with error."  *New York Times*, 376 U.S. at 279.  Because Plaintiff failed to show – and cannot show – that the cover lines constitute commercial speech, his statutory claims are barred by the First Amendment.

Notably, Plaintiff did not cite *a single case* in which a court has held that allegedly false cover lines constitute commercial speech.  Indeed, the only cases cited by Plaintiff stand for the opposite proposition, to the extent they are apposite at all.  For example, Plaintiff relies heavily on *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 638-40 (9th Cir. 1982), but he conflates and therefore misstates holdings on separate issues in that case.  *See* Appellant Br. at 8-11.  In *Cher*, which involved

---

[11] *See also United States v. Alvarez*, 638 F.3d 666, 670 (9th Cir. 2011) (Smith, J., concurring in denial of rehearing petition) (courts give "'near absolute protection … to false but nondefamatory statements of fact outside the commercial realm'" (quoting Elena Kagan, *Private Speech, Public Purpose: The Role of Governmental Motive in First Amendment Doctrine*, 63 U. Chi. L. Rev. 413, 477 (1996)).

multiple publisher defendants, this Court affirmed the district court's judgment against one of the publishers because that defendant's misleading statements were made in a "tear out" subscription order card and in display ads that had been published in a different magazine and in a newspaper – not on the cover of the magazine where the article appeared.   These communications, the court concluded, were commercial speech.  *Id.*  Moreover, in *Cher*, this Court *rejected* the argument made by Plaintiff here, that the use by another defendant of the word "Exclusive" on the cover of *Star* magazine supported a finding that the defendant "falsely represent[ed] to the public that Cher had given *Star* an exclusive interview."  *Id.* at 638 (reversing judgment against that defendant).  In any event, apart from this critical distinctions, the claims at issue in *Cher* were framed in terms of the famous plaintiff's statutory and common law rights of publicity, *id.*, and the damage to her reputation and business interests in being associated in false ways with a particular publication.  It was not, as here, a claim by an individual consumer that he was "misled" into purchasing a copy of the magazine.[12]

_____

[12] Plaintiff's reliance on *Eastwood v. National Enquirer, Inc.*, 123 F.3d 1249 (9th Cir. 1997), and *Solano v. Playgirl, Inc.*, 292 F.3d 1078 (9th Cir. 2002), is equally misplaced.  Neither case involved any discussion whatsoever of commercial speech, nor did they involve actions purportedly brought by consumers under California's false advertising laws.  Instead, like *Cher*, they involved claims for violation of the plaintiff-actors' rights of publicity, and this Court discussed "knowing falsity" in connection with whether the plaintiffs had carried their burdens, on those claims, of showing "actual malice," an entirely different question

28

*Keimer v. Buena Vista Books, Inc.*, also invoked by Plaintiff, Appellant Br. at 12-14, is likewise inapposite. There, the court emphasized that it was deciding a traditional demurrer (not an anti-SLAPP motion), and therefore was obliged to accept as true the *allegations* that the challenged statements on the cover of the book and videotape packaging were commercial speech and that they were false. 75 Cal. App. 4th 1220, 1224 n.3 (1999). Moreover, the defendant in *Keimer* expressly *conceded* that the cover statements were advertisements. *Id.* at 1229. Neither is true here.

In addition, the *Keimer* case is factually distinguishable from this case. There, the statement at issue on the cover of the book was that an investment club had achieved a specific rate of return on its investment using the method described in the book. The specific rate of return, however, had been misstated both on the cover and in the book. *Id.* at 1224. The defendant argued that, because the misstatement of the rate inside the book was non-commercial speech entitled to the protection afforded by the First Amendment, the repetition of that same misstatement in what it had conceded was an "advertisement" on the cover necessarily was entitled to the same First Amendment protection – an argument the court rejected. *See id.* at 1223 (question presented was whether "First Amendment

---

than whether reasonable consumers were deceived into purchasing this issue of the Enquirer because of allegedly false statements on its cover.

protect[s] *advertising* statements made on book and videotape covers which *reiterate verifiably false factual statements* contained in the books and videotape themselves" (emphasis added)). That is not AMI's argument. Instead, AMI argued – and the district court correctly found – that the cover lines cannot properly be deemed to be commercial speech when considered in full and in context. For all of these reasons, the district court properly dismissed plaintiff's statutory claims under the UCL, FAL, and CLRA as a matter of law. ER 21.

## C. Plaintiff's Statutory Claims Fail For Additional, Independent Reasons.

Although the district court did not address AMI's alternative arguments, the anti-SLAPP motion also argued that Plaintiff's First, Second and Third Causes of Action should be dismissed because, as a matter of law, Plaintiff could not establish all the required elements of any of them. In his brief to this Court, Plaintiff does not even address these arguments, and has therefore waived them. *Greenwood v. FAA,* 28 F.3d 971, 977 (9th Cir. 1994) (court of appeals will not review issues that are not argued specifically in party's opening brief); *City of Emeryville v. Robinson,* 621 F.3d 1251, 1262 n.10 (9th Cir. 2010) (party waived argument by failing to address issue in its opening brief except in a footnote); *Acosta-Huerta v. Estelle,* 7 F.3d 139, 144 (9th Cir 1992) (issue raised in brief without supporting argument and citation to authority is deemed abandoned). But this Court can affirm on any grounds that were raised below, "'regardless of

30

whether the district court relied upon, rejected, or even considered that ground.'"

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir.

2014), *quoting In re ATM Fee Antitrust Litig*., 686 F.3d 741, 748 (9th Cir. 2012).

### 1. Plaintiff Failed To Demonstrate A Violation of the Consumers Legal Remedies Act.

To make out a CLRA violation, the plaintiff must show that the defendant

committed one of 26 specifically enumerated unlawful practices. Cal. Civ. Code

§ 1770(a). In his First Cause of Action, Plaintiff alleges that AMI violated section

1770(a)(14) because it "misrepresented the news information contained in the

March 31, 2014 Edition of the 'National Enquirer.'" ER 35, ¶ 32. But Section

1770(a)(14) applies to alleged misrepresentations about "'rights, remedies, or

obligations'" in the sale of a good or service. *Nelson v. Pearson Ford Co.,* 186

Cal. App. 4th 983, 1022 (2010) (citation omitted). Moreover, it requires a written

contract between the parties. *Wang v. Massey Chevrolet,* 97 Cal. App. 4th 856,

870 (2002). Here, Plaintiff did not and could not allege that he entered into *any*

kind of contract with AMI that involved representations about his "rights,

remedies, or obligations" with regard to the issue of the Enquirer that he

purchased, much less a written contract. Therefore, as a matter of law, he cannot

state a CLRA claim, and certainly did not demonstrate a probability that he could

prevail on it. The district court's dismissal of the CLRA claim therefore may be

affirmed on this independent ground.

31

### 2. Plaintiff Did Not Establish Any Violation of the False Advertising and Unfair Competition Laws.

Plaintiff's Second Cause of Action alleges that AMI used "various forms of advertising media in its marketing of the March 31, 2014" Enquirer that were false and deceived consumers, in violation of the False Advertising Law, Business & Professional Code § 17500, *et seq.* ER 36, ¶ 36. In his Third Cause of Action, Plaintiff alleges that AMI violated the Unfair Competition Law by deceiving consumers into believing that the issue of the Enquirer in question "contains news information that it, in fact, does not contain." ER 37, ¶ 43. To state a claim under either the FAL or UCL, however, Plaintiff must show by his allegations that "members of the public are likely to be deceived" by defendants' statements. *Bernardo v. Planned Parenthood Fed'n of Am.,* 115 Cal. App. 4th 322, 356 (2004) (quoting *Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 951 (2002) (internal marks omitted)) (granting anti-SLAPP motion on both FAL and UCL claims where plaintiff could not establish that consumers were likely to be deceived based on allegedly false statements at issue).

Here, if Plaintiff is attempting to claim that the cover falsely represents that the Enquirer contains "hard news," *see* ER 24 & 38, ¶ 50, that representation is neither false nor misleading as a matter of law. Setting aside the amorphous meaning of "hard news," the Enquirer's reporting on the subject is no different from that of scores of other media outlets, none of which could conclusively

32

demonstrate what happened to Flight 370, but all of which were reporting on what government officials and experts were saying they believed to be the cause of the plane's disappearance. *See* SER 10-40. Thus, even accepting as true plaintiff's allegation that he bought the issue *only* because he thought it contained "hard news" about the disappearance (an allegation that, given his history as a would-be class action plaintiff, stretches credulity), he and other consumers received exactly what they paid for when they purchased the Enquirer.

Plaintiff also premises his claim on the notion that reasonable readers would understand the cover lines to be a representation by AMI that the Enquirer had found and would disclose the plane's *physical location*. That, of course, is not what the cover lines say. Moreover, this Court has recognized that reasonable readers bring a different set of expectations to bear on supermarket publications like the Enquirer than they do to other types of news magazines. *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 901 n.5 (9th Cir. 1992) (readers of supermarket magazines "understand the inherent limitations in the fact-finding process" at publications within this genre, and do not expect "verbatim accuracy" as readers of other publications may). As the district court observed, "[t]o the extent the cover lines could be construed as a representation that the plane had been found, Simoni's status as an educated attorney combined with the fact that the Enquirer is a well-known tabloid publication makes any purported reliance on

33

those representations unreasonable." ER 21; *see also Gifford v. Nat'l Enquirer, Inc.*, 1993 WL 767192, at \*5 (C.D. Cal. 1993) (where "article allegedly calls Plaintiffs' [attempted procreation] practices 'shocking,' 'controversial,' and 'high-tech extremes,' such sensationalization is no doubt immediately discounted by readers" and court "can take judicial notice of the fact that one who picks up" such a publication "does so with the immediate caution that what they read is in large part rhetorical hyperbole" (*citing Greenbelt Coop. Publ'g Ass'n v. Brestler*, 398 U.S. 6, 13 (1970))); *Jones v. Globe Int'l, Inc.*, 1995 WL 819177, at \*10 n.25 (D. Conn. 1995) (in libel cases arising from similar articles published in both *Star* magazine and *National Enquirer*, court observed that "fact that these words were published in a tabloid puts readers on notice that what they are reading is in large part rhetorical hyperbole," and pointing out that the "Supreme Court has recognized that courts may take judicial notice of the fact that those who read tabloids do so with the immediate caution that what they read is in large part rhetorical hyperbole" (citing *Greenbelt*, 398 U.S. at 14)).

Viewed in context, in light of the express wording of the cover lines, the widespread reporting in the international media of theories regarding the fate of Flight 370 at the time, and the fact that even to this day the whereabouts of the plane are unknown, this Court can and should find as a matter of law that no reasonable member of the public could have been deceived into purchasing the

34

March 31 issue of the Enquirer because they believed that the Enquirer alone knew the specific location of the plane. The district court's dismissal of the FAL and UCL claims therefore may be affirmed on this independent ground.

### D. The District Court Correctly Held That Plaintiff Cannot Establish The Elements Of His Common Law Claims.

Plaintiff waived his three common law claims for unjust enrichment, fraud and breach of contract by not responding *at all* to AMI's arguments in the anti-SLAPP motion about these claims. Despite this waiver, the district court nonetheless analyzed Plaintiff's common law claims, and held correctly that Plaintiff could not establish the requisite elements of any of these claims. ER 21-22. Plaintiff also has abandoned his common law claims in this Court: his opening brief did not say *a single word* about the district court's dismissal of any of these claims. Consequently, the district court's order dismissing the Fourth, Fifth and Sixth Causes of Action should be affirmed on this basis alone. *E.g.*, *Greenwood,* 28 F.3d at 977. But the district court also plainly was correct in dismissing each of these claims on the merits.

### 1. There Is No Cause of Action for Unjust Enrichment.

As the district court correctly held, there is no cause of action for "unjust enrichment" in California. ER 15 (citing *Smith v. Ford Motor Co.*, 462 F. App'x 660, 665 (9th Cir. 2011); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009); *see also Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793

(2003) ("[u]njust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself." (citations and internal marks omitted)).

### 2.     Plaintiff's Fraud Claim Fails.

In California, the elements of a fraud claim are: (a) misrepresentation, (b) knowledge of falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. *Lovejoy v. AT&T Corp.,* 92 Cal. App. 4th 85, 93 (2001). Here, the district court correctly held that plaintiff could not demonstrate that the cover lines or Articles were false, nor could he establish that he reasonably relied on any allegedly false statements. ER 21; *see also Stutzman*, 2013 WL 4853333, at *19 (allegedly false representations that the books were "biography" and "nonfiction" were not "guarantees that the work contains only statements that are one hundred percent factual.").  As demonstrated above, any representation that the Enquirer contained "hard news" or that the "mystery" of Flight 370 had been "solved," would be understood by the reasonable reader as the Enquirer's view of the best theory or explanation of the disappearance based on the Enquirer's then-current reporting and sources. *See infra* Section IV.C.2.  To hold otherwise would make the media subject to an impossible standard of absolute truth that not only would violate the Constitution, *see Hepps*, 475 U.S. at 776-77, but also is entirely

36

inconsistent with the standard of what a *reasonable* reader would expect.[13]  The

district court's dismissal of Plaintiff's fraud claim therefore should be affirmed.

### 3.    Plaintiff's Breach of Contract Claim Fails.

As the district court correctly recognized, Plaintiff's claim for breach of

contract required him to demonstrate privity of contract between himself and AMI,

which he did not and could not do.  ER 22 (*citing Pfau v. Mortenson*, 858 F. Supp.

2d 1150, 1159-61 (D. Mont. 2012), *aff'd*, 542 F. App'x 557 (9th Cir. 2013)); *see*

*also Windham at Carmel Mountain Ranch Ass'n v. Super. Ct.*, 109 Cal. App. 4th

1162, 1176 (2003) (in general there can be no contract between strangers; privity

requires a relationship between the parties).  In *Pfau,* the plaintiffs purported to

represent a class of consumers who purchased either of the books *Three Cups of*

*Tea* or *Stones Into Schools.*  858 F. Supp. 2d at 1153.  The plaintiffs claimed to

have been injured because they had believed the books were "non-fiction" when, in

fact, many of the anecdotes were apocryphal.  *Id.*  The court dismissed the

plaintiffs' breach of contract claims, holding that a book publisher was not in

privity of contract with purchasers of the book.  *Id.* at 1160.  The *Pfau* court

---

[13] The alleged promise to provide "hard news information," whatever that amorphous phrase may mean, is too vague to support a fraud claim because the law provides no definition of it.  *E.g., Rochlis v. Walt Disney Co.*, 19 Cal. App. 4th 201, 216 (1993) ("[p]romises too vague to be enforced will not support a fraud claim any more than they will one in contract."), *disapproved on other grounds by Turner v. Anheuser Busch, Inc.*, 7 Cal. 4th 1238 (1994).

rejected the plaintiffs' argument that by "writing, publishing, advertising, marketing and promoting" the books as non-fiction, the defendants entered into an implied contract with the plaintiffs.  *Id.*  To the contrary, the court held, because the defendants had not communicated with any plaintiff, no contract had been formed.  *Id.*  The same analysis applies here.  Plaintiff has no privity with AMI, and his breach of contract claim was properly dismissed.

## VI.     THE DISTRICT COURT CORRECTLY AWARDED AMI ITS ATTORNEYS' FEES

An award of fees and costs is mandatory under the anti-SLAPP statute, and applies to successful motions brought in federal court.  *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005) (*per curiam*).  "The entitlement to fees and costs enhances the anti-SLAPP law's protection of the state's 'important, substantive' interests."  *Northon v. Rule,* 637 F.3d 937, 939 (9th Cir. 2011) (citation omitted); *see also Graham-Sult v. Clainos,* 756 F.3d 724, 752 (9th Cir. 2014) (fee provision "is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit" (citation and internal quotation marks omitted)).  Despite this clear authority, however,  Plaintiff argues that the district court should not have awarded to AMI its attorneys' fees unless it first granted him leave to amend his complaint, and then only if he re-alleged the stricken claims.  Appellant Br. at 21-28.  But Plaintiff's argument relies on cases decided under a

38

different version of the relevant federal rule, which are inapposite on their facts as well.[14]

Rule 15(a)(1) of the Federal Rules of Civil Procedure, on which Plaintiff relies, previously gave plaintiffs the right to amend a complaint before an answer was filed.  In 2009, however, the Rule was revised:  it now requires a plaintiff to amend his pleading within 21 days after filing it or within 21 days after the filing of a motion attacking the pleading.  As the Advisory Committee Notes explained:

> [Under former Rule 15, s]erving a responsive pleading terminated the right to amend.  Serving a motion attacking the pleading did not terminate the right to amend, because a motion is not a "pleading" as defined in Rule 7.  The right to amend survived beyond decision of the motion unless the decision expressly cut off the right to amend.
>
> The distinction drawn in former Rule 15(a) is changed in two ways [by this Amendment].  First, the right to amend once as a matter of course terminates 21 days after service of a motion under Rule 12(b), (e), or (f).  This provision will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion.  A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim.  It also should advance other pretrial proceedings.

---

[14] Plaintiff does not challenge the reasonableness of the district court's fee award, and has waived his right to do so on appeal.  *Doty v. County of Lassen,* 37 F.3d 540, 548 (9th Cir. 1994) (failure to brief issue of attorneys' fees in district court waives right to challenge decision on appeal).

Fed. R. Civ. P. 15, Advisory Committee Notes, 2009 Amendments. Thus, as now written, Rule 15 does not permit a party to wait to see how a dispositive motion is resolved by the court before deciding whether to amend his pleading. Instead, he has 21 days after the filing of the motion to do so, or he *loses* that right and may only amend thereafter with the court's permission.

As a result of this change in Rule 14, Plaintiff's reliance on *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1090-91 (9th Cir. 2004), and on other cases decided prior to 2009, is misplaced. In *Verizon,* the Court addressed the circumstance where state procedural laws "directly collide" with the Federal Rules of Civil Procedure. 377 F.3d at 1090-91. In particular, because the prior rule permitted a party in federal court to amend the complaint at any time before an answer was filed – even after the court granted a dispositive motion, *see Mayes v. Leipziger,* 729 F.2d 605, 607 (9th Cir. 1984) – the Court held that the SLAPP statute could not override this federal rule. As revised, however, the Federal Rules of Civil Procedure prohibit a plaintiff from amending his complaint without leave of court more than 21 days after the filing of an answer or a dispositive motion.[15]

---

[15] Courts in the Ninth Circuit treat an anti-SLAPP motion as a Rule 12(b)(6) motion where, as here, the motion is based on legal deficiencies in plaintiff's complaint. *See Do v. Hollins Law, P.C.*, 2013 WL 4013659, at *2 n.1 (N.D. Cal. Aug. 5, 2013) (treating anti-SLAPP motion that raised only legal issues as Rule 12(b)(6) motion); *Agnir v. Gryphon Solutions, LLC*, 2013 WL 4082974, at *16 (N.D. Cal. Aug. 9, 2013) (same); *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 976 (C.D. Cal. 1999) (same).

DWT 26560747v7 0051427-000011

Thus, insofar as the amendment rules are relevant at all here, the application of state and federal law no longer "directly collide" in the way they did at the time *Verizon* was decided.

Although Plaintiff cites more recent authorities that purport to apply the *Verizon* "rule" allowing plaintiffs to be given leave to replead, Appellant Br. 24-28, even a cursory review of the cited opinions reveals that they do not actually support the proposition he advances. For example, *Greensprings Baptist Christian Fellowship Trust v. Cilley*, 629 F.3d 1064, 1065 (9th Cir. 2010), only involved the question of whether an order that granted an anti-SLAPP motion but gave leave to amend is appealable as a "final judgment;" in that case, leave to amend had been given because the court's ruling turned on whether the plaintiff had identified sufficient facts to meet its burden of showing malice. The court gave the plaintiff an opportunity to allege additional facts that might change the outcome of its ruling. The court expressly *declined* to rule on the legal question for which plaintiff here now cites the decision. *Id.* at 1066.

Similarly, in *Brown v. Electronic Arts, Inc.*, 722 F. Supp. 2d 1148 (C.D. Cal. 2010), the question raised was whether the defendant was the "prevailing party" where its first motion to strike had been unopposed, and the plaintiff had been given leave to amend his complaint before the court declined to exercise its supplemental jurisdiction. Thus, the court never adjudicated the merits of the anti-

41

SLAPP motion, and the defendant therefore was not a prevailing party for purposes of that statute. *Id.* at 1155, 1157. The remaining authorities cited by plaintiff are simply inapposite. *See Gardner v. Martino*, 563 F.3d 981, 985, 990-92 (9th Cir. 2009) (plaintiffs had amended their initial complaint as of right upon removal to federal court; defendants thereafter successfully moved under Oregon's anti-SLAPP statute to strike first amended complaint, and this Court affirmed both the order granting motion to strike and orders denying leave to further amend because amendment would have been futile); *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, 2014 WL 1922833 (E.D. Cal. May 14, 2014) (granting motion to strike with leave for plaintiffs to amend, and denying motion for attorneys' fees, where no indication that amendment would be futile and denial of leave to amend therefore would conflict with Rule 15's requirement of liberality); *Stutzman*, 2013 WL 4853333 (same); *Garcia v. Allstate Ins.*, 2012 WL 4210113 (E.D. Cal. Sept. 18, 2012) (same).

In short, *none* of the cases relied on by Plaintiff involved the situation where, as here, a plaintiff seeks leave to amend his complaint after his claims were stricken by the court on the merits and as a matter of law, with a finding that any amendment would be futile. In this scenario, as one court explained:

> To allow amendment after an anti-SLAPP motion to strike has been granted eviscerates the purpose of the anti-SLAPP statute. Such an outcome would be inconsistent with *Lockheed* and the strong policy

42

> underlying the anti-SLAPP law. The federal rules
> liberally permitting amendment are rules of general, not
> specific, application. The anti-SLAPP law applies to
> state law claims which are governed by the substantive
> law of California.

*Flores v. Emerich & Fike*, 2006 WL 2536615, at *10 (E.D. Cal. Aug. 31, 2010).

This Court repeatedly has held that a district court properly denies leave to amend a complaint where such amendment would be futile. *See Wages v. IRS*, 915 F.2d 1230, 1235 (9th Cir. 1990) ("'if a complaint is dismissed for failure to state a claim upon which relief can be granted, leave to amend may be denied, even if prior to a responsive pleading, if amendment would be futile'" (citations omitted)); *accord e.g.*, *Leadsinger*, 512 F.3d at 532; *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

Here, the district court held that Plaintiff's California statutory claims fail as a matter of law because the speech that forms the basis for his claims is not "commercial speech," ER 19-20, and no amount of amendment could alter the nature of the speech at issue. Similarly, the court properly held that Plaintiff's California common law claims fail as a matter of law for multiple reasons, including that he cannot demonstrate reasonable reliance on any false factual representation, ER 21-22, circumstances derived from the nature of the publication at issue that cannot be cured by any possible amendment. Neither Rule 15(a)(1) nor the cases cited by Plaintiff provide any authority for the obviously absurd

43

proposition that he has a "right" to amend his complaint after dismissal of it on the merits, *eve where amendment necessarily would be futile*. *See Flores*, 2006 WL 2536615, at *10 (denying motion for leave to amend after granting anti-SLAPP motion striking state law claims); *Ray Charles Found. v. Robinson*, 919 F. Supp. 2d 1054, 1066-67, 1072 (C.D. Cal. 2013) (denying leave to amend and awarding attorneys' fees after anti-SLAPP motion granted where "the flaws identified [in the Complaint] are legal" and any amendment would be futile); *Alkayali v. Alkayali*, 2012 WL 1835728, at *3-4 (Bankr. S.D. Cal. May 16, 2012) (distinguishing *Verizon*, *Brown* and similar authorities relied upon by plaintiff here, granting anti-SLAPP motion and denying leave to amend because any such amendment would be futile). Thus, the district court's refusal to permit amendment and its subsequent award to AMI of its attorneys' fees were entirely correct and should be affirmed.[16]

---

[16] Plaintiff appears to have abandoned his argument that the district court improperly denied his Rule 60(b)(6) motion seeking the same relief as he does on this appeal. *See* ER 5. In any event, the district court correctly concluded that Rule 60(b)(6) "cannot be used as a substitute for an appeal," ER 11 (citing *McCarthy v. Mayo*, 827 F.2d 1310, 1318 (9th Cir. 1987)), and that plaintiff had failed to demonstrate the "extraordinary circumstances" required for relief under Rule 60(b)(6), *id.*

DWT 26560747v7 0051427-000011

## VII.     CONCLUSION

For the foregoing reasons, Appellee respectfully requests that this Court affirm the district court's dismissal of this case, with prejudice, and affirm its award of attorneys' fees to Appellee.

Respectfully submitted,

Dated:  April 2, 2015          DAVIS WRIGHT TREMAINE LLP
                               KELLI L. SAGER
                               JONATHAN L. SEGAL

                               LEVINE SULLIVAN KOCH & SCHULZ, LLP
                               JAY WARD BROWN
                               CAMERON A. STRACHER


                               By:   /s/ Kelli L. Sager
                                        Kelli L. Sager
                               Attorneys for Defendant-Appellee
                               American Media, Inc.

45

## ADDENDUM OF PERTINENT CONSTITUTIONAL PROVISIONS AND STATUTES

### First Amendment to the United States Constitution

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

### Art. I, Sec. 2(a) of the California Constitution

Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.

### California Code of Civil Procedure Section 425.16

(a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

(b) (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

(2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

(3) If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.

(c) In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If

46

the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.

(d) This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor.

(e) As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(f) The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion shall be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing.

(g) All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision.

(h) For purposes of this section, "complaint" includes "cross-complaint" and "petition," "plaintiff" includes "cross-complainant" and "petitioner," and "defendant" includes "cross-defendant" and "respondent."

(i) An order granting or denying a special motion to strike shall be appealable under Section 904.1.

(j) (1) Any party who files a special motion to strike pursuant to this section, and any party who files an opposition to a special motion to strike, shall, promptly upon so filing, transmit to the Judicial Council, by e-mail or facsimile, a copy of the endorsed, filed caption page of the motion or opposition, a copy of any related notice of appeal or petition for a writ, and a conformed copy of any order issued pursuant to this section, including any order granting or denying a special motion to strike, discovery, or fees.

47

(2) The Judicial Council shall maintain a public record of information transmitted pursuant to this subdivision for at least three years, and may store the information on microfilm or other appropriate electronic media.

**Federal Rule of Civil Procedure 15(a)**

(a) Amendments Before Trial.

  (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:

    (A) 21 days after serving it, or

    (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

  (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

  (3) Time to Respond. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

## <u>STATEMENT OF RELATED CASES AND PROCEEDINGS</u>

Pursuant to Circuit Rule 28-2.6, Appellee American Media, Inc., states that

it is not aware of any related cases or proceedings.

Dated: April 2, 2015                DAVIS WRIGHT TREMAINE LLP
                                     KELLI L. SAGER
                                     JONATHAN L. SEGAL

                                     LEVINE SULLIVAN KOCH & SCHULZ, LLP
                                     JAY WARD BROWN
                                     CAMERON A. STRACHER


                                     By:  /s/ Kelli L. Sager
                                     _____
                                              Kelli L. Sager
                                     Attorneys for Defendant-Appellee
                                     American Media, Inc.

49

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B) because this brief contains 11,116 words, excluding the parts

of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft Word

2010 in Times New Roman, Point Size 14.

Dated:  April 2, 2015                    DAVIS WRIGHT TREMAINE LLP
                                         KELLI L. SAGER
                                         JONATHAN L. SEGAL

                                         LEVINE SULLIVAN KOCH & SCHULZ, LLP
                                         JAY WARD BROWN
                                         CAMERON A. STRACHER

                                         By: _____
                                              Jonathan L. Segal
                                         Attorneys for Defendant-Appellee
                                         American Media, Inc.

DWT 26560747v7 0051427-000011